# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KENNETH SHARP,
    Petitioner,

vs.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:10-cv-831

Spiegel, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Pickaway Correctional Institution in Orient, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The case is before the Court on the petition and respondent's return of writ with exhibits. (Docs. 1, 6).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On July 30, 2009, the Hamilton County, Ohio, grand jury returned an indictment charging petitioner with one count of trafficking in marijuana "in an amount that equaled or exceeded 20,000 grams," in violation of Ohio Rev. Code § 2925.03(A)(2); and one count of possessing marijuana "in an amount that equaled or exceeded 20,000 grams," in violation of Ohio Rev. Code § 2925.11(A). (Doc. 6, Ex. 1).

On September 30, 2009, petitioner entered a guilty plea to the trafficking charge, which carried a mandatory prison sentence of eight (8) years, in exchange for the dismissal of the possession count. (*See* Doc. 6, Exs. 3-4). In the written plea entry, executed by petitioner and filed with the court, petitioner stated in pertinent part:

> I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advi[c]e, counsel and competence. I am not under the influence of drugs or alcohol at this time. *I have not been forced or threatened in any way to cause me to sign and offer this plea.*

****

> I have read this form and I knowingly, voluntarily and intelligently enter this guilty plea.

(Doc. 6, Ex. 3) (emphasis added).   The plea entry also contained a statement signed by petitioner's trial counsel, which provided:  "I have explained to the defendant prior to his/her signing this plea, the charge(s) in the indictment or information, the penalties therefor and his/her constitutional rights in this case.  I represent that, in my opinion, the defendant is competent to enter this plea and now does so knowingly, intelligently and voluntarily."  (Doc. 6, Ex. 3).

At the plea hearing held on September 30, 2009, petitioner's counsel began by stating on the record that although petitioner was pleading guilty to the trafficking charge, the parties had reached an understanding that if petitioner cooperated with law enforcement "[o]n a box," the State would "consider allowing [petitioner] to withdraw his plea" so that he could be convicted and sentenced on a reduced charge.  (Doc. 6, Plea Hearing Tr. 2).  The prosecuting attorney emphasized:  "No promises at this point.  Just waiting to see what he does, if he's a work star or not."  (Doc. 6, Plea Hearing Tr. 3).  The trial court agreed to continue the matter for sentencing for a few months for that purpose.  (Doc. 6, Plea Hearing Tr. 3, 10-11).

The court then proceeded to advise petitioner that he was pleading guilty to a second-degree-felony trafficking charge and, therefore, would "have to serve the full eight years" upon acceptance of the plea.  (Doc. 6, Plea Hearing Tr. 3-4).  Petitioner indicated that he understood the eight-year sentence was mandatory.  (Doc. 6, Plea Hearing Tr. 4).  The court also engaged in the following colloquy with petitioner to ascertain petitioner's knowledge and understanding of the terms set forth in the written plea entry, as well as petitioner's agreement to those terms:

> THE COURT:  How old are you?

THE DEFENDANT:  I'm 25.

THE COURT:  Can you read and write?

THE DEFENDANT:  Yes.

THE COURT:  I've got a written plea form here that has got your signature[;] did you sign this?

THE DEFENDANT:  Yes, sir.

THE COURT:  By signing that you're telling me you read this over, it's been explained to you and you fully understand; is that right?

THE DEFENDANT:  Yes.

(Doc. 6, Plea Hearing Tr. 5-6).  After advising petitioner of the rights he was giving up by entering a guilty plea, and after obtaining assurances from petitioner that he was "making this plea with a clear mind" and understood "everything we have gone over today," the court accepted the plea and found petitioner guilty of the trafficking offense charged in the indictment.  (Doc. 6, Plea Hearing Tr. 7-9).

It appears from the online docket records maintained by the Hamilton County Clerk of Courts that petitioner was immediately released on bond upon the court's acceptance of his guilty plea to the supervision of law enforcement officials assigned to the electronic monitoring unit (EMU).[1]  It further appears from the record that petitioner was required to wear an electronic monitoring device on his ankle while released to home surveillance prior to sentencing.  (*See* Doc. 6, Sentencing Hearing Tr. 29-30 & Ex. 17, p. 7).  During that time, petitioner was supervised by EMU officers, but was required to work with "vice control" police officers in the cooperation matter.   (*See* Doc. 6, Sentencing Hearing Tr. 15-16).

The sentencing hearing was held over two months later, on December 3, 2009.  The

---

[1]*See* http://www.courtclerk.org/case_summary.asp?sec=doc&casenumber=B0905031.

hearing commenced as follows:

> THE COURT : [T]he deal was if you pled to [the trafficking charge], it's mandatory eight years, Felony 2, carries a mandatory eight years, no probation. You got to do the eight years. The deal was you were supposed to work with the police on this. Do a trade up and do an introduction, or something like that.

> And this plea was taken back on September 30th. We have given you over a month to do something, actually two months . . . to do something, right? October, two months to do something, over two months to do something, over 60 days. And, officers, has he done anything on the case?

> THE POLICE OFFICER: No, Your Honor. He has not returned our calls. I talked to him maybe three or four times and told him to get a hold of us. I wasn't going to babysit him. . . .

> ****

> EMU told him he needed to get a hold of us and never contacted us. That's where we're at, I mean, he didn't do anything.

(Doc. 6, Sentencing Hearing Tr. 13-15).

Petitioner intervened at that point, stating that he did contact EMU officers and had provided information about certain individuals to them. (Doc. 6, Sentencing Hearing Tr. 15-16, 20). Petitioner conceded that a "vice control" officer had called him and "said that, you know, you need to get a hold of me," but that he could not help the police out "because I was stuck in the house, and [EMU] only let me out on Monday[s]." (Doc. 6, Sentencing Hearing Tr. 17). The court then sought to have the EMU officers contacted and brought in to the hearing for the purpose of providing petitioner with a "fair hearing" on the issue of his lack of cooperation with the police. (Doc. 6, Sentencing Hearing Tr. 21).

In the meantime, the colloquy between the court and police officers continued in pertinent part:

> THE POLICE OFFICER: Your Honor, the bottom line is I talked to him early October. I told him he needed to get a hold of us, we would get him time out as much time as he needed.

THE COURT:  We made that pretty clear.  I would let him off EMU to work with you, that was not a problem.

THE POLICE OFFICER:  He was given my card, he had my number.  The fact is he's not telling the truth.  If he would have called us, we would have worked with him.  We work with everybody that calls us.

THE COURT:  The idea was keep him in the house until he's ready to work, called you up and made a deal, made some phone calls.

\*\*\*\*

. . . . I told them, you know, you got to work with the police, if you work with the police and do[] an introduction, trade up, then at that point they would let him withdraw his plea, which carries eight years mandatory, . . . and he would possibly get probation or something a lot less.  We talked about that, officer, right?

THE POLICE OFFICER:  Yes.

THE POLICE OFFICER:  Yes, Your Honor.

THE COURT:  And then this is your partner with vice, . . . he said he called you, what is your story?

THE POLICE OFFICER:  Okay.  He called me when he was first released on EMU, Judge, and gave me like three names of people that he knew was selling drugs.  I informed him at that time he needed to be able to buy, just giving me names of people was not gonna help –

THE COURT:  We explained that to him, we needed an introduction.  That doesn't – if you want to trade up and get a break on your sentence, you need to introduce somebody.

THE POLICE OFFICER:  Especially what he was facing, the charges he was facing, the time he was facing.  So, I explained to him –

THE COURT:  Because he's a pretty big guy, he's 46-pounds [of marijuana], so he got a break on that, you got to get a big deal going.

THE POLICE OFFICER:  We explained that to him before we came to you, stuck my neck out to get him out.

\*\*\*\*

THE COURT:  You wanted a big dealer.

THE POLICE OFFICER:  Absolutely.

THE POLICE OFFICER:  Right.  So, . . . I explained that to him once he was out and called, just giving me names is not going to take any time off, you know, I can go out and do that kind of work on my own, you need to be able to buy.  If you can identify somebody that you can buy from, we will get you time out, we will start working on it.

**** 

I think I got him out once or twice with extra time, just to go out and try to mingle.  After that time I didn't –

(Doc. 6, Sentencing Hearing Tr. 18-19, 22-25).

One of the EMU officers appeared at the hearing and testified that an officer named "Robin" had called him many times to inform him that petitioner was not going out or "doing anything" to assist the police.  (Doc. 6, Sentencing Hearing Tr. 25-26).  The EMU officer said he spoke with petitioner "multiple times" to urge him to "go out and do something;" the officer testified further:

Then it came down to where it was getting towards the end and Robin said, hey, you need to go out there and get him straightened out, his time is coming to the end.  Then we go out to his house and find out his dad is in there growing weed, and we arrest dad and he's still not doing anything.

(Doc. 6, Sentencing Hearing Tr. 26).

After petitioner made a final statement in his defense, the court concluded that petitioner had been given  "ample time" in which to cooperate with the police by setting up introductions to other individuals involved in trafficking marijuana, and had failed to do so.  (*See* Doc. 6, Sentencing Hearing Tr. 29-30).  The court stated: "I'm just going to give you the mandatory eight years.  That's what you have to do.  Nothing you can do about it. . . .  Just like I told you I was going to do if you didn't cooperate."  (Doc. 6, Sentencing Hearing Tr. 34).

On December 8, 2009, the trial court issued a Judgment Entry sentencing petitioner to the

mandatory eight-year prison term.  (Doc. 6, Ex. 5).

## State Appeal Proceedings

With the assistance of new counsel, petitioner filed a timely notice of appeal to the Ohio

Court of Appeals, First Appellate District.  (Doc. 6, Ex. 6).  Petitioner's appellate counsel filed a

brief pursuant to *Anders v. California,* 386 U.S. 738 (1967), which contained the following

statement:  "After a comprehensive review of the complete record, appellate counsel is unable to

find error which would entitle appellant to relief."  (Doc. 6, Ex. 7).  Counsel requested that the

court conduct an independent review of the record and that petitioner be provided an

"opportunity to raise any points he may choose."  (Doc. 6, Ex. 7, p. 6).  Counsel also filed a

separate motion requesting the court's permission to withdraw as petitioner's counsel on appeal.

(Doc. 6, Ex. 8).

Thereafter, petitioner filed a *pro se* motion for extension of time in which to file a *pro se*

brief on appeal.   (Doc. 6, Ex. 10).  The Ohio Court of Appeals denied petitioner's motion, but

granted petitioner leave to file an addendum to counsel's *Anders* brief and "raise additional legal

points for consideration by this Court."  (Doc. 6, Ex. 11).

Petitioner submitted an addendum to the appellate brief, which was accepted for filing.

(*See* Doc. 6, Exs. 12-13).  In the addendum, petitioner raised the following claims as assignments

of error:

> 1.  Appellant was deprived of his right to the effective assistance of counsel at
> trial, as a result of trial counsel's failure to raise a cruel and unusual [punishment]
> claim, attacking Ohio's mandatory sentencing statutes on trafficking and/or
> possession of mari[j]uana, as violative [of] the 8th Amendment to the U.S.
> Constitution, towards first time offenders, by requiring first time offenders to
> spend a mandatory term of eight years in prison.

2. Appellant was deprived [of] the effective assistance of counsel at the trial court level, as a result of trial counsel's failure to challenge the constitutionality of Ohio Rev. Code Section 2925.03(C)(3)(f) and 2925.11(C)(3)(f), based on the fact that the statute's "mandatory/maximum" sentencing criteria, violates the doctrine of separation of powers between the three b[r]anches of government.

3. Appellant's plea of guilty was not made voluntarily[,] willingly[,] or intelligently, as it was induced by threats against his life, in violation of the Due Process Clause.

4. Appellant's plea of guilty was not made voluntarily[,] knowingly[,] willingly[,] or intelligently[,] when: (a) the trial court failed to advise the appellant of his right to be tried by a judge; (b) of his right to testify; and (c) of his right to represent himself.

(Doc. 6, Ex. 12).

On June 30, 2010, the Ohio Court of Appeals issued a Judgment Entry summarily concurring "in counsel's conclusion that the proceedings below were free of error prejudicial to Sharp," and affirming the trial court's judgment. (Doc. 6, Ex. 15).

Petitioner filed a timely *pro se* appeal to the Ohio Supreme Court. (Doc. 6, Ex. 16). In his memorandum in support of jurisdiction, petitioner asserted five propositions of law:

1. Appellant was deprived of his right to the effective assistance of counsel on appeal and the defendant's plea of guilty was not made voluntarily, willingly, or intelligently, as it was induced by threats against his life, in violation of the Due Process Clause; and as a result of the fact that the trial court failed to comply with Ohio Criminal Rule 11, by failing to "inquire" into whether the plea was induced by threats, against his life[,] or against his family's lives.

2. Appellant was deprived of his right to the effective assistance of counsel at trial, as a result of trial counsel's failure to raise a cruel and unusual [punishment] claim, attacking Ohio's mandatory sentencing statutes on trafficking and/or possession of mari[j]uana, as violative [of] the 8th Amendment to the U.S. Constitution, towards first time offenders, by requiring first time offenders to spend a mandatory term of eight years in prison.

3. Appellant was deprived [of] the effective assistance of counsel at the trial court level, as a result of trial counsel's failure to challenge the constitutionality of Ohio Rev. Code Section 2925.03(C)(3)(f) and 2925.11(C)(3)(f), based on the fact that the statute's "mandatory/maximum" sentencing criteria, violates the doctrine of

separation of powers between the three b[r]anches of government.

4.  Appellate counsel on direct appeal, violated appellant's 6th and 14th Amendment right, to the effective assistance of counsel, by filing a no error brief.

5.  Appellant's right to due process of law, and meaningful appellate review, on direct appeal, was violated, as a result of the appellate court's failure to rule on the assignments of error[], and issues raised by the appellant in his *pro se* brief, thus, also in violation of the Supreme Court's ruling in *Anders v. California*, and in violation of the 6th and 14th Amendments to the United States Constitution, and in violation [of] the effective assistance of counsel.

(Doc. 6, Ex. 17).

On October 27, 2010, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (Doc. 6, Ex. 18).

### State Post-Conviction Proceeding

On July 14, 2010, while he was pursuing an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' direct appeal decision, petitioner filed a *pro se* pleading with the trial court requesting permission under Ohio R. Crim. P. 32.1 to withdraw his guilty plea, as well as post-conviction relief pursuant to Ohio Rev. Code § 2953.21.  (Doc. 6, Ex. 19).  Petitioner claimed that his guilty plea was invalid because "it was induced by threats against his life, in violation of the Due Process Clause; and as a result of the fact that the trial court failed to comply with Ohio Criminal Rule 11, by failing to 'inquire' into whether the plea was induced by threats, against his life[,] or against his family's lives."  (Doc. 6, Ex. 19, p. 10).  Petitioner also challenged the validity of his guilty plea on the ground that his trial counsel provided ineffective assistance by failing "to investigate the case prior to the plea."   (Doc. 6, Ex. 19, pp. 16-22).

On August 4, 2010, the trial court overruled petitioner's motion to withdraw guilty plea and petition for post-conviction relief without opinion.  (Doc. 6, Ex. 20).  Respondent states that

petitioner did not pursue an appeal from that decision in the state courts.  (Doc. 6, Brief, p. 4).

**Federal Habeas Corpus**

Petitioner filed the instant habeas corpus petition in November 2010.  (*See* Doc. 1).  He alleges four grounds for relief:

> **Ground One:**  Petitioner's guilty plea, was not made knowingly or voluntarily, as it was made by inducement, that the petitioner's family members would become dead unless this petitioner took the fall.

> **Ground Two:**  Petitioner's guilty plea was not made knowingly, voluntarily, or willingly, as a result of the trial court's failure to ask the petitioner whether any threats were made in exchange for his plea.

> **Ground Three:**  Petitioner's guilty plea was not made knowingly, voluntarily, or willingly, in violation of the Due Process Clause; and in light of the fact that defense counsel was ineffective.

> **Ground Four:**  Appellate counsel on direct appeal was ineffective, by her filing an "*Anders* brief," which resulted in appellant/petitioner's appeal being dismissed; and violated petitioner's rights on appeal.

(Doc. 1, pp. 5-6).

In the return of writ filed in response to the petition, respondent contends that petitioner procedurally defaulted and has waived his third ground for relief and that petitioner's remaining claims for relief lack merit.  (Doc. 6, Brief, pp. 7-21).

## II.  OPINION

### A.  Petitioner Is Not Entitled To Relief Based On The Claims Alleged In Grounds One And Two Challenging The Validity Of His Guilty Plea

In Grounds One and Two of the petition, petitioner challenges the validity of his guilty plea because (1) the plea was coerced by threats made against him and his family; and (2) the trial court failed to inquire at the plea hearing, as required by Ohio R. Crim. P. 11, whether any threats had been made to induce the plea.  (Doc. 1, p. 5).  As respondent has conceded in the

return of writ (Doc. 6, Brief, p. 8), the claims were raised by petitioner in his *pro se* briefs on appeal to both the Ohio Court of Appeals and Ohio Supreme Court and, therefore, are subject to review on the merits.

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional issues that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d). Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600.

As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court recently made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher,* 132 S.Ct. 38, __, 2011 WL 5335411, at *3-4 (U.S. Nov. 8, 2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must

"look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, *supra,* 2011 WL 5335411, at *3, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1) requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'*" *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

In the instant case, the Ohio courts neither cited the relevant Supreme Court cases nor identified the clearly-established, applicable standard of review enunciated by the Supreme Court in addressing petitioner's constitutional claims. Nevertheless, the undersigned concludes that petitioner is not entitled to habeas corpus relief because "neither the reasoning nor the result of the state-court decision contradicts" the governing Supreme Court precedents. *See Early,* 537 U.S. at 8; *see also Harrington*, 131 S.Ct. at 784.

The Fourteenth Amendment's Due Process Clause guarantees that a guilty plea must be

made voluntarily and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *Boykin v. Alabama,* 395 U.S. 238, 242 (1969); *see also Brady v. United States,* 397 U.S. 742, 748 (1970); *King v. Dutton,* 17 F.3d 151, 153 (6th Cir. 1994). In *Brady*, 397 U.S. at 755, the Supreme Court stated the applicable standard:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*See also Mabry v. Johnson,* 467 U.S. 504, 509 (1984), *abrogated in part on other grounds by Puckett v. United States*, 556 U.S. 129, 129 S.Ct. 1423, 1430 n.1 (2009). "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void," and a "conviction based upon such a plea is open to collateral attack." *Machibroda v. United States,* 368 U.S. 487, 493 (1962) (and cases cited therein).

The voluntariness of a guilty plea must be assessed in light of all relevant circumstances surrounding the plea. *Brady,* 397 U.S. at 749; *King*, 17 F.3d at 153 (and cases cited therein). In federal habeas corpus proceedings, the State generally satisfies its burden of showing that the plea was voluntary and intelligent by producing a transcript of the state court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). "The factual findings of a state court that the plea was proper generally are accorded a presumption of correctness." *Id.* (and cases cited therein); *see also Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 2878 (2009). However, although "the record constitutes a formidable barrier to a collateral attack on a guilty plea, that barrier 'is not invariably insurmountable.'" *Bari v. Williams,* No. 1:09cv2880, 2011 WL 3648124, at *7 (N.D. Ohio Apr. 11, 2011) (Report & Recommendation) (quoting *Blackledge*

*v. Allison*, 431 U.S. 63, 74 (1977)), *adopted,* 2011 WL 3648113 (N.D. Ohio Aug. 18, 2011). Ultimately, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Parke v. Raley,* 506 U.S. 20, 29 (1992) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal [habeas] review." *Desmyther v. Bouchard,* 108 F. App'x 364, 366 (6th Cir. 2004) (quoting *Frank v. Blackburn,* 646 F.2d 873, 882 (5th Cir. 1980)); *see also Alvarez v. Straub,* 21 F. App'x 281, 283 (6th Cir. 2001).

In this case, petitioner first contends that his guilty plea was not entered knowingly or voluntarily because, in violation of Ohio R. Crim. P. 11, the trial court failed to inquire on the record at the plea hearing whether any threats or promises had been made to induce him to enter the plea. In *Boykin*, which involved a state trial record that was "wholly silent" and shed "no light" on the circumstances surrounding the defendant's guilty plea, the Supreme Court held in a direct review appeal that the trial judge committed reversible error when it accepted the defendant's plea "without an affirmative showing that [the plea] was intelligent and voluntary." *Boykin*, 395 U.S. at 240, 242. In response to *Boykin*, the states and federal government enacted criminal procedural rules to govern the plea-taking inquiry. However, the safeguards contained in those various procedural rules have never been held to be constitutionally mandated in and of themselves; instead, the safeguards were promulgated as a prophylactic measure to assist the court "in making the constitutionally required determination that a defendant's guilty plea is truly voluntary" and "to produce a complete record at the time the plea is entered of the factors relevant to th[e] voluntariness determination." *McCarthy v. United States*, 394 U.S. 459, 465

(1969) (citing *Waddy v. Heer*, 383 F.2d 789 (6th Cir. 1967)); *see also United States v. Garcia,* 983 F.2d 625, 627 (5th Cir. 1993) ("Fed. R. Crim. P. 11 provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas.").

In the absence of any Supreme Court precedent holding that the rules governing the plea-taking colloquy are constitutionally required, petitioner's allegation of error based solely on the trial court's failure to comply with a requirement set forth in Ohio R. Crim. P. 11 fails to state a claim of federal constitutional magnitude. Indeed, in an analogous case, a federal habeas court rejected the petitioner's claim that his guilty plea was rendered invalid by the trial court's failure to comply with a state rule mandating an inquiry regarding "undisclosed promises, threats or inducements;" in so ruling, the court noted that the petitioner had "failed to cite any authority showing that the requirement[s] established in [the state rule] are required by the Constitution." *Pigee v. Quigley,* Civ. Act. No. 07-CV-15110, 2009 WL 3465477, at *7 (E.D. Mich. Oct. 23, 2009). *Cf. Montstream v. Superintendent, Bedford Hills Corr. Facility*, No. 06-CV-0787(RJA)(VEB), 2011 WL 284461, at *4 (W.D.N.Y. Jan. 4, 2011) (Report & Recommendation) (and cases cited therein) (holding that because the "United States Constitution does not require a factual inquiry before a court may accept a defendant's guilty plea," the petitioner's contention "that her plea allocution was insufficient does not raise a federal constitutional issue"), *adopted,* 2011 WL 283252 (W.D.N.Y. Jan. 25, 2011); *Hill v. West,* 599 F. Supp.2d 371, 388 (W.D.N.Y. 2009) (same).

Furthermore, to the extent petitioner alleges he is entitled to relief because the trial court committed error under state-law by failing to inquire on the record about any threats, promises or inducements, he fails to state a cognizable ground for relief. The federal habeas court has jurisdiction to review a state prisoner's habeas petition only on the ground that the challenged

16

confinement violates the Constitution, laws or treaties of the United States. *See* 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* __ U.S. __, 131 S.Ct. 13, 16 (2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Accordingly, because petitioner's allegation that the trial court violated a requirement set forth in Ohio R. Crim. P. 11 during the plea-taking process raises an issue of state-law only, it does not constitute a cognizable ground for federal habeas relief. *Cf. Holland v. Burt*, No. 2:07cv11004, 2009 WL 236693, at *5 (E.D. Mich. Feb. 2, 2009) (holding that the trial court's alleged failure to comply with a state rule in accepting a guilty plea "is not cognizable on habeas review").

The Court turns now to consider whether petitioner is entitled to relief based on his remaining claim challenging the constitutionality of his guilty plea. Although all relevant circumstances surrounding the plea (including the Rule 11 plea colloquy) are to be considered in assessing whether a constitutional violation occurred, habeas relief may be granted only if those surrounding circumstances demonstrate that the plea was unknowingly, unintelligently or involuntarily entered. *Cf. Rice v. Trippett,* Civ. Act. No. 99-CV-76237-DT, 2000 WL 791667, at *8 (E.D. Mich. June 6, 2000) ("When a petitioner is convicted as a result of a guilty plea, habeas review is limited to whether the plea was made voluntarily, intelligently, or knowingly.").

Here, petitioner does not dispute, and indeed the record demonstrates, that at the plea hearing, petitioner was both informed of and expressed that he understood (1) the nature and substance of the charges against him; (2) the mandatory eight-year prison sentence he would be required to serve, as well as other penalties he faced, by pleading guilty to the trafficking count; and (3) that by entering the guilty plea, he was waiving his right to a jury trial in which the State was required to prove his guilt beyond a reasonable doubt, he could not be forced to testify

against himself, and he had the right to confront adverse witnesses and to present witnesses in his defense. (*See* Doc. 6, Plea Hearing Tr. 3-8). It also appears from the plea hearing transcript that petitioner entered the plea bargain with the State based on the understanding that if he cooperated with the police as a "work star" during the two-month period prior to sentencing, the State would consider, without promising, that he be allowed to withdraw his guilty plea and re-plead to a reduced charge. (*See* Doc. 6, Plea Hearing Tr. 2-3).

Petitioner has never challenged the trial court's finding at the sentencing hearing that he failed to cooperate with the police and, therefore, was subject to the terms of the original plea bargain, including the mandatory eight-year prison sentence. In addition, petitioner has never challenged his guilty plea on the ground that he lacked the mental capacity or otherwise failed to understand the nature and substance of the criminal charges, the direct consequences of his plea, or the rights that he waived on the record when he entered the plea.[2] The sole argument that petitioner has raised to challenge the constitutionality of his guilty plea is that the plea was induced or coerced by threats of violence against him and members of his family. (*See* Doc. 1, p. 5; *see also* Doc. 6, Ex. 12, pp. 9-15; Ex. 17, pp. 2-7; Ex. 19, pp. 10-15). However, petitioner has not provided any evidentiary support for this contention. Instead, he generally alleged in his *pro se* addendum to the *Anders* brief filed on direct appeal that threats were made by an unnamed individual, identified only as the "real person to whom the marijuana belonged," to the effect that if petitioner "snitched," petitioner and members of petitioner's family "would be killed." (*See*

---

[2]Petitioner did assert in a *pro se* assignment of error on direct appeal that he was not informed before entering his plea of the following additional trial "rights:" right to be tried by a judge; right to testify in his own defense; and right to represent himself. (Doc. 6, Ex. 12, p. 16). However, he has not raised such a claim as a ground for relief in the instant action. (*See* Doc. 1). In any event, the claim was procedurally defaulted in the state courts because petitioner failed to raise it in his *pro se* memorandum in support of jurisdiction on further appeal to the Ohio Supreme Court or in the state post-conviction proceeding. (*See* Doc. 6, Exs. 17, 19).

*Doc. 6, Ex. 12, pp. 13-14).*  In his *pro se* memorandum in support of jurisdiction to the Ohio

Supreme Court and in his state post-conviction petition, petitioner posited a slightly different

argument; he contended, again in a general fashion, that he entered the guilty plea because he was

told that he and his family "would be killed unless I take the fall."  (*See* Doc. 6, Ex. 17, p. 6).

Petitioner stated:  "I agreed to 'work' for the police; but, the only reason why I made this false

agreement, was only to enable me to '**protect**' my family, not to '**work**' for the cops, who failed

to even offer me protection."  (Doc. 6, Ex. 17, p. 6; Ex. 19, p. 14) (emphasis in original).

In the absence of evidentiary support, petitioner's conclusory and self-serving allegations

are inadequate to establish that his guilty plea was induced or coerced by threats or was otherwise

involuntarily entered.  *See, e.g.*, *United States v. Mackay,* Nos. 3:97CR0208T(01), 3:04-CV-

0413-D, 2007 WL 700895 (N.D. Tex. Mar. 6, 2007) (and cases cited therein) ("Conclusory

allegations of coercion do not suffice to render a guilty plea involuntary."), *aff'd*, 339 F. App'x

367 (5th Cir.), *cert. denied,* 130 S.Ct. 650 (2009); *Rice, supra,* 2000 WL 791667, at *9 (citing

*Workman v. Bell,* 160 F.3d 276, 287 (6th Cir. 1998); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th

Cir. 1998); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3rd Cir. 1991)) ("Conclusory

allegations, without any evidentiary support, do not provide a basis for habeas relief.").

In contrast, in the written plea entry executed by petitioner and filed with the court,

petitioner expressly stated:  "I have not been forced or threatened in any way to cause me to sign

and offer this plea."  (Doc. 6, Ex. 3).  Although the trial judge did not specifically inquire at the

plea hearing whether any threats or promises had been made to induce petitioner's guilty plea,

the judge did ask petitioner whether he could read and write and whether he had signed the plea

entry form.  (Doc. 6, Plea Hearing Tr. 5-6).  Most importantly, the trial judge obtained

petitioner's assurance that his signature on the plea entry meant that he had read the form, it had

been explained to him, and that he fully understood its contents. (Doc. 6, Plea Hearing Tr. 6).

Furthermore, although petitioner was provided numerous opportunities to speak at both the plea hearing and the subsequent sentencing hearing held two months thereafter, petitioner made no mention at either hearing of any threats against him or his family, nor did he even express general concerns about his or his family's safety. Instead, at the sentencing hearing, petitioner vociferously argued that he had attempted to cooperate with the police as he had tried to contact the police and had even provided law enforcement with the names of certain individuals. Although it would have been the opportune time to argue that the lack of any further cooperation on his part was justified by alleged threats made against his life or family members' lives, petitioner failed to assert any such claim as a factor to be considered by the court in deciding whether to allow him to withdraw his guilty plea prior to sentencing. (*See* Doc. 6, Sentencing Hearing Tr.). *Cf. United States v. Spencer,* 836 F.2d 236, 239 (6th Cir. 1987) (denying motion to withdraw a guilty plea, which the defendant claimed had been coerced by a nonindicted co-conspirator's threats of violence, in part because the defendant "never once, in prior appearances before the court, claimed fear of [the co-conspirator]"); *Petrone v. United States*, No. 84 Civ. 4815(CBM), 1985 WL 1207, at *4-5 (S.D.N.Y. May 7, 1985) (rejecting the petitioner's claim that his guilty pleas were the result of coercion and duress stemming from threats of violence because he did not raise the issue of threats or coercion when he had the opportunity to do so at the time of both his plea and his sentencing).

In an analogous case, in which the habeas petitioner pleaded guilty to certain state charges with the understanding that he would be permitted to withdraw the plea and re-plead to a reduced charge if he cooperated with the police, the district court rejected the petitioner's claim that he was coerced into entering the plea after it was determined at sentencing that petitioner had failed

to fulfill his cooperation obligations and thus could not re-plead to a reduced charge. *See Reyes v. Phillips*, No. 02 Civ. 7319(LBS), 2005 WL 2757541 (S.D.N.Y. Oct. 24, 2005). In that case, unlike here, the petitioner expressed concern about his family's safety at the plea hearing and stated at the sentencing hearing that "he and his family [were] being threatened." *Id.* at *6. Nevertheless, the district court held that the trial court's summary denial of the petitioner's motion to withdraw his guilty plea did not warrant federal habeas relief; the court reasoned in pertinent part:

> Petitioner's contention that he was pressured into his plea is contradicted by his assurance at the allocution that he pled guilty of his own free will, and thus the trial court was not in error for not granting a hearing on that ground. . . . Furthermore, assuming *arguendo* that Petitioner's allegation that he and his family were being threatened were true, the transcript of the allocution reveals that Petitioner was aware of the possibility that his family might be threatened, or that his family was already being threatened, before he decided to plead guilty; if the former, the alleged materialization of threats does not retroactively render his plea involuntary, and if the latter, the case for voluntariness of his plea is, in fact, strengthened, because it shows that Petitioner agreed to cooperate even in the face of these threats.

*Id.*

In this case, there is no evidence in the record even remotely suggesting that petitioner was subjected to threats or any improper influence when making the decision to enter a plea of guilt to the second-degree-felony trafficking charge. Petitioner has not cited or presented any evidence to support his conclusory allegations of coercion or to refute his signed statement in the written plea entry that he was not forced or threatened in any way to enter his guilty plea. Therefore, petitioner has not demonstrated that he is entitled to habeas corpus relief based on the claim that his plea was involuntarily entered in response to threats of violence made against him and members of his family. *Cf. Blackledge,* 431 U.S. at 73-74 (emphasizing that the "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal,

as are contentions that in the face of the record are wholly incredible"); *Bennerman v. Howes*, No. 2:06cv15463, 2010 WL 864485, at *6 (E.D. Mich. Mar. 9, 2010) (and cases cited therein) (holding that the petitioner's "bare claim that his counsel coerced him into pleading guilty is insufficient to overcome the presumption of truthfulness which attaches to statements made during the plea colloquy, in which he denied that any threats had been used to get him to enter his plea"); *Restucci v. Spencer*, 249 F. Supp.2d 33, 45-46 (D. Mass. 2003) (ruling that the petitioner's "self-serving affidavit" and the affidavits of his family members to corroborate his claim of coercion based on threats of violence were "insufficient as a matter of law to overcome the presumption of verity ascribed to his [contrary] statements" on entering his guilty plea).

Accordingly, in sum, Grounds One and Two of the petition should be denied with prejudice because (1) petitioner has not stated a cognizable ground for federal habeas relief to the extent he alleges that, in violation of Ohio R. Crim. P. 11, the trial court failed to ask at the plea hearing whether any threats had been made to induce his guilty plea; and (2) petitioner has not demonstrated that he is entitled to relief based on his unsubstantiated self-serving allegations, which are belied by the record, that he was coerced by threats of violence to enter the guilty plea.

## B. Petitioner Procedurally Defaulted And Has Waived The Ineffective-Assistance-Of-Trial-Counsel Claim Alleged In Ground Three Of The Petition

In Ground Three of the petition, petitioner essentially contends that he is entitled to habeas relief because his trial counsel provided ineffective assistance by failing to conduct an "'investigation' into the case, for purposes of gathering evidence against the true owner of the marijuana, and for purposes of presenting evidence of the threats made." (*See* Doc. 1, p. 6). Respondent argues in response that the claim is waived because (1) petitioner did not raise the specific issue in his *pro se* briefs on direct appeal in the state courts; and (2) although petitioner

arguably presented the issue in his post-sentence application to withdraw his guilty plea and for post-conviction relief, he did not pursue an appeal from the trial court's ruling in that matter. (Doc. 6, Brief, pp. 8-12). Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

In addition, it is well-settled that in order to satisfy the "fair presentation" requirement, the habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987); *see also Hicks v. Straub*, 377 F.3d 538, 552-53 (6th Cir. 2004) (under the "exhaustion doctrine," the petitioner is required "to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review"). The relevant inquiry for determining if a claim has been fairly presented is whether the claim raised in the federal habeas petition is "separate and distinct" from the claim or claims brought before the state courts. *Brandon v. Stone,* 226 F. App'x 458, 460 (6th Cir. 2007) (citing *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004); *Wong v. Money,* 142 F.3d 313, 322 (6th Cir. 1998)). "In the context of ineffective assistance claims, 'to the extent that [such a] claim is based upon a different allegedly

ineffective action than the claim presented to the state courts, the claim has not been fairly presented.'" *Id.* (quoting *Caver v. Straub,* 349 F.3d 340, 346-47 (6th Cir. 2003)); *see also Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002) (finding that the claim raised to the state courts, stemming from defense counsel's failure to use a pharmacologist in the guilt phase to establish an insanity defense, was based on an "entirely different theory" than the federal habeas claim that counsel was ineffective for failing to develop evidence of organic brain damage and head injuries as mitigation); *Wong,* 142 F.3d at 322 (holding that an ineffective-assistance-of-trial-counsel claim based on the failure to pursue an investigation to find an expert supportive of an insanity defense was procedurally defaulted because it was "separate and distinct" from the claim raised to the state courts that counsel was ineffective for deciding to forego an insanity defense).  As one district court explained:

> [A] petitioner does not fairly present a claim if he presents an issue to the state courts under one legal theory and set of facts, and then presents the issue to the federal courts under a different legal theory or a different set of facts.  Rather, he must present to the federal court essentially the same facts and legal theories that were considered and rejected by the state courts.

*Monroe v. Houk,* No. 2:07cv258, 2009 WL 2898520, at *41 (S.D. Ohio Sept. 8, 2009).

If a petitioner fails to "fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted."  *Nesser v. Wolfe,* 370 F. App'x 665, 669 (6th Cir. 2010) (quoting *Pudelski v. Wilson,* 576 F.3d 595, 605 (6th Cir. 2009), *cert. denied*, 130 S.Ct. 3274 (2010)).  A procedural default occurs when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Webb v. Mitchell,* 586 F.3d 383, 397 (6th Cir. 2009) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)), *cert. denied,* 130 S.Ct. 2110 (2010); *see also Nesser*, 370 F. App'x at 669.

If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The petitioner's procedural default in the state courts will preclude federal habeas review of the federal claims unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued in the return of writ, petitioner procedurally defaulted the ineffective-assistance-of-trial-counsel claim alleged in Ground Three because he neither raised it as an example of ineffectiveness in his *pro se* briefs filed on direct appeal nor pursued an appeal from the denial of his state post-conviction application.

Specifically, with respect to the direct review proceedings, petitioner did assert claims of error to both the Ohio Court of Appeals and Ohio Supreme Court based on defense counsel's alleged ineffectiveness in failing to raise certain challenges to Ohio's mandatory sentencing statutes applicable to the marijuana trafficking and possession charges contained in the indictment. (*See* Doc. 6, Exs. 12, 17). However, petitioner did not raise any claim on direct

appeal based on counsel's alleged failure to conduct an investigation to determine the "true owner" of the marijuana or to establish the existence of threats against petitioner and his family. Therefore, petitioner committed a procedural default in the direct review proceedings to the extent he failed to fairly present to the state appellate courts the particular ineffective-assistance-of-trial-counsel claim alleged as a ground for federal habeas relief.

Second, with respect to petitioner's post-sentence motion to withdraw his guilty plea and petition for post-conviction relief, petitioner did allege in that pleading that his trial attorney provided ineffective assistance by failing "to investigate the case prior to the plea." (*See* Doc. 6, Ex. 19, pp. 16-22). However, petitioner committed another procedural default because he did not pursue an appeal from the trial court's August 4, 2010 decision overruling his motion to withdraw guilty plea and petition for post-conviction relief without opinion. (*See* Doc. 6, Ex. 20). The claim is defaulted at this juncture "because Ohio does not permit delayed appeals in post-conviction proceedings, and this is an adequate and independent ground upon which to deny relief." *Nesser,* 370 F. App'x at 670 (citing *Stojetz v. Ishee,* 389 F. Supp.2d 858, 885-86 (S.D. Ohio 2005), in turn citing *State v. Nichols,* 463 N.E.2d 375, 378 (Ohio 1984)).

Petitioner has neither argued nor otherwise demonstrated that failure to consider the defaulted ineffective-assistance-of-trial-counsel claim will result in a "fundamental miscarriage of justice," or in other words, that the alleged error "probably resulted in the conviction of a factually innocent person." *Pudelski,* 576 F.3d at 606 n.2; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Murray,* 477 U.S. at 495-96.

In addition, petitioner has not demonstrated "cause" for his procedural defaults in the state courts. Petitioner did assert an ineffective-assistance-of-appellate-counsel claim as a proposition of law in his *pro se* brief on appeal to the Ohio Supreme Court. (*See* Doc. 6, Ex. 17,

pp. 13-14).[3]  Ineffective assistance of counsel may constitute cause for a procedural default.  *See, e.g., Murray,* 477 U.S. at 488.  However, in order to establish cause based on that argument, the ineffective-assistance-of-counsel claim itself must not be procedurally defaulted.  *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Taylor v. McKee,* 649 F.3d 446, 451 (6th Cir. 2011); *Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010), *cert. denied*, 132 S.Ct. 127 (2011).

In his memorandum in support of jurisdiction to the Ohio Supreme Court, petitioner only contended that his appellate counsel was ineffective for failing to amend the *Anders* brief "after discovering the Four (4) Assignments of Error[] that Appellant filed pro se" and for failing "to point [out] any possible errors that might support reversal."  (Doc. 6, Ex. 17, pp. 13-14).  These allegations are inadequate to constitute fair presentation of the claim that appellate counsel was ineffective for failing to raise the specific ineffective-assistance-of-trial-counsel claim alleged in Ground Three of the petition.  Therefore, such an argument is procedurally defaulted, and petitioner cannot rely on his general claim of ineffective assistance by his appellate attorney to establish "cause" sufficient to excuse his default in this federal habeas action.

In any event, even assuming the "cause" argument had been fairly presented to the state courts and thus subject to review on the merits, petitioner has not demonstrated that his appellate counsel was ineffective for failing to raise the defaulted ineffective-assistance-of-trial-counsel claim on direct appeal.

Under the applicable two-part standard of review enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687 (1984), to establish that his appellate counsel was

_____

[3]Petitioner has also alleged an ineffective-assistance-of-appellate-counsel claim as a ground for relief in the instant action.  (Doc. 1, p. 6).  Although petitioner has listed numerous instances of alleged ineffectiveness as "supporting facts," petitioner does not cite appellate counsel's failure to raise the defaulted claim alleged in Ground Three as one of those instances.

ineffective, petitioner must show both (1) his appellate attorney made such a serious error that she was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. Under the first prong of the *Strickland* test, it must be shown that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for appellate counsel's error, the outcome of the appeal would have been different. *See id.* at 694. The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

In the instant case, petitioner's conclusory, uncorroborated, and self-serving allegations of threats of violence have been the only arguments asserted as support for his underlying ineffective-assistance-of-trial-counsel claim. Petitioner has never substantiated any of his conclusory allegations by providing specific information regarding the identity of the "true owner" of the marijuana, or more importantly, the substance of the evidence that would have been discovered or the defenses that could have been raised if defense counsel had conducted a more thorough investigation before petitioner entered his guilty plea to the trafficking count. Moreover, petitioner has not argued, nor is there any evidence in the record to suggest, that a further investigation would have uncovered exculpatory evidence that (1) would have caused petitioner to proceed to trial rather than enter his guilty plea, or (2) would have given rise to potential affirmative defenses likely to succeed at trial. *Cf. Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (holding that in the guilty-plea context, the prejudice prong of the *Strickland* test requires

a showing of a reasonable probability that, absent counsel's alleged error, the petitioner would not have pleaded guilty and would instead have insisted on proceeding to trial); *see also Railey v. Webb*, 540 F.3d 393, 415-16 (6th Cir. 2008), *cert. denied,* 129 S.Ct. 2878 (2009). Therefore, petitioner has not demonstrated that he was prejudiced by the failure of his appellate attorney to raise the ineffective-assistance-of-trial-counsel claim on direct appeal as required under the second prong of the *Strickand* test. Any argument by petitioner of "cause" based on appellate counsel's alleged ineffectiveness is thus unavailing.

Accordingly, in sum, in the absence of a showing of cause for petitioner's procedural defaults in the state courts or that a fundamental miscarriage of justice will occur if the defaulted claim is not considered herein, the Court concludes that petitioner has waived the ineffective-assistance-of-trial-counsel claim alleged in Ground Three of the petition. The claim, which is barred from review by this Court, is subject to dismissal with prejudice.

**C. Petitioner Is Not Entitled To Relief Based On The Ineffective-Assistance-Of-Appellate-Counsel Claim Alleged In Ground Four Of The Petition**

In Ground Four of the petition, petitioner alleges that his appellate counsel was ineffective because she filed a no-error *Anders* brief, "which resulted in [the] appeal being dismissed." (Doc. 1, p. 6). In the return of writ, respondent contends that the claim is "plainly meritless." (Doc. 6, Brief, p. 11).

As an initial matter, it is important to point out that "[a]n appellate attorney's assistance is not rendered *per se* ineffective by the filing of an *Anders* brief." *Unsworth v. Konteh*, No. 3:06cv1856, 2007 WL 4365402, at *17 (N.D. Ohio Dec. 10, 2007). To hold otherwise would effectively nullify the Supreme Court's ruling in *Anders* that appellate counsel be allowed "to seek to withdraw" if counsel is convinced "after diligently investigating the possible grounds of

appeal . . . that the appeal is frivolous." *Id.*; *see also Anders*, 386 U.S. at 744. As the Supreme

Court stated in *Smith v. Robbins,* 528 U.S. 259, 278 (2000) (footnote and citations omitted):

> [A]lthough . . . indigents generally have a right to counsel on a first appeal as of
> right, it is equally true that this right does not include the right to bring a frivolous
> appeal and, concomitantly, does not include the right to counsel for bringing a
> frivolous appeal. . . . To put the point differently, an indigent defendant who has
> his appeal dismissed because it is frivolous has not been deprived of "a fair
> opportunity" to bring his appeal, for fairness does not require either counsel or a
> full appeal once it is properly determined that an appeal is frivolous.

In *Robbins,* 528 U.S. at 285, the Supreme Court held that the two-part standard of review

enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984), is the proper standard to apply in

evaluating a claim that appellate counsel was ineffective for filing an *Anders* brief instead of a

"merits brief." To obtain relief under that standard, the petitioner must show that his counsel on

direct appeal "was objectively unreasonable . . . in failing to find arguable issues to appeal," *and*

that there is a "reasonable probability that, but for his counsel's unreasonable failure to file a

merits brief, he would have prevailed on appeal." *Robbins,* 528 U.S. at 285-86 (citing

*Strickland,* 466 U.S. at 687-91, 694).

Here, it appears that petitioner is claiming, as he argued in his memorandum in support of

jurisdiction to the Ohio Supreme Court, that his appellate counsel was ineffective because she

failed to file a merits brief raising the four assignments of error that he had asserted in his *pro se*

addendum to the *Anders* brief. (*See* Doc. 1, p. 6; Doc. 6, Ex. 17, pp. 13-14). The Ohio Court of

Appeals permitted the addendum to be filed and, therefore, apparently considered and rejected

the *pro se* assignments of error in reaching its decision to "concur in counsel's conclusion that

the proceedings below were free of error prejudicial to Sharp." (*See* Doc. 6, Exs. 13, 15).

Therefore, petitioner is unable to establish, as required under the second prong of the *Strickland*

test, that he was prejudiced by counsel's failure to file a merits brief raising the same assignments

of error.  *Cf. Gaines v. Warden, Mansfield Corr. Inst.*, No. 1:07cv347, 2011 WL 2884913, at *8 (S.D. Ohio July 18, 2011) (Barrett, J.) (adopting the magistrate judge's recommendation to deny relief based on the finding that no prejudice was shown because the state appellate court apparently "considered the claims that petitioner sought to have heard on direct appeal").

In any event, because petitioner pleaded guilty, he waived all non-jurisdictional constitutional challenges based on events that occurred before he entered the plea.  *See Tollett v. Henderson,* 411 U.S. 258, 267 (1973).  The only challenges petitioner arguably could have raised on direct appeal would have been those attacking the validity of his guilty plea and the sentence that was imposed.  *Cf. Suttles v. Warden, Noble Corr. Inst.*, No. 1:06cv55, 2007 WL 2110498, at *16 (S.D. Ohio July 17, 2007) (Spiegel, J.; Hogan, M.J.).  However, petitioner has not demonstrated that if his appellate counsel had asserted such claims in a "merits brief," the result of his appeal would have reasonably likely been different.

The undersigned has found no merit to the claims alleged in Grounds One and Two attacking the validity of petitioner's guilty plea.  Moreover, petitioner's guilty plea was not rendered invalid, as petitioner additionally claimed on direct appeal (*see* Doc. 6, Ex. 12, p. 16), by the trial court's failure to inform him at the plea hearing that he was giving up his rights to be tried by a judge and to testify and represent himself at trial.   In *Boykin v. Alabama*, 395 U.S. 238, 243 (1969), the Supreme Court stated that the "federal constitutional rights . . . involved in a waiver that takes place when of a plea of guilty is entered" are: (1) the privilege against compulsory self-incrimination guaranteed by the Fifth and Fourteenth Amendments; (2) the right to a trial by jury; and (3) the right to confront one's accusers.  The Supreme Court has never held that a criminal defendant must be specifically advised of "each and every right he would be waiving by pleading guilty."  *Riddle v. Ludwick,* No.1:09cv813, 2011 WL 5526042, at *8 (W.D.

Mich. Oct. 20, 2011) (Report & Recommendation) (and Supreme Court cases cited therein), *adopted*, 2011 WL 5526026 (W.D. Mich. Nov. 14, 2011). Indeed, a strong argument can be made that the trial court is *not* required by the federal Constitution to obtain during the plea-taking process a knowing and voluntary waiver of rights that essentially amount to a personal choice *not* to exercise competing constitutionally-guaranteed trial rights–*i.e.*, the right to a jury trial, the right to counsel, and the right to remain silent. *Cf. United States v. Webber,* 208 F.3d 545, 551-52 (6th Cir. 2000) (holding that in the absence of "any statements or actions from the defendant indicating disagreement with counsel or the desire to testify," the trial court is not required to "ensure that the defendant has waived the right [to testify] on the record" at trial) (and cases cited therein); *see also United States v. Yono,* 605 F.3d 425, 426 (6th Cir. 2010) (same); *United States v. Hung Thien Ly,* 646 F.3d 1307, 1314 (11th Cir. 2011) (pointing out that "unlike the right to counsel and the right to a jury trial, there is no constitutional default protecting the right to testify," which the court defined as the "right to choose" between testifying or exercising the competing constitutional right to remain silent).

Here, the record reflects that petitioner was advised of and knowingly and voluntarily waived his "constitutional rights to a jury trial, to confront witnesses against [him], to have subpoenaed witnesses in [his] favor, and to require the state to prove [his] guilt beyond a reasonable doubt at a trial at which [he] cannot be compelled to testify against [him]self." (Doc. 6, Ex. 3 & Plea Hearing Tr. 3-8). The plea colloquy was adequate to ensure that petitioner knowingly and voluntarily entered his guilty plea with sufficient awareness of the relevant circumstances and likely consequences. *See Boykin,* 395 U.S. at 242; *cf. United States v, Todd,* 92 F. App'x 319, 321 (6th Cir. 2004) (holding that the record revealed that the defendant "knowingly, intelligently, and voluntarily pleaded guilty" in a case where the district court

informed the defendant of the following rights he was giving up by entering a guilty plea – the "right to trial by jury, the right to subpoena witnesses, the right to counsel, the presumption of innocence, the government's burden of proof, and the right not to testify").

Finally, there is no reasonable likelihood that the result of petitioner's appeal would have been different if the claims he sought to have heard challenging Ohio's mandatory sentencing statutes had been raised in a merits brief filed by counsel. Petitioner contended in the direct review proceedings that his trial counsel should have challenged the statutes requiring the imposition of a mandatory eight-year prison sentence for second-degree-felony trafficking and possession offenses because (1) such a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, and (2) the statutory provisions violate the doctrine of separation of powers. (*See* Doc. 6, Exs. 12, 17). However, the Ohio courts, including the First District Court of Appeals that decided petitioner's appeal, have uniformly held that the challenged provisions pass constitutional muster under the Eighth Amendment and do not violate the state's separation-of-powers doctrine. *See, e.g., State v. Campa*, No. C-010254, 2002 WL 471174, at *6 (Ohio Ct. App. 1 Dist. Mar. 29, 2002) (and cases cited therein) (holding that (1) the mandatory eight-year sentence does not constitute cruel and unusual punishment because it "is not disproportionate to other crimes of similar stature;" and (2) "the judiciary's power to determine the sentence of individual offenders" was not usurped by the General Assembly when it enacted mandatory sentencing laws pursuant to its authority "to define criminal conduct and to determine the appropriate punishment"); *accord State v. Conner*, No. 84073, 2005 WL 977670, at *9 (Ohio Ct. App. 8 Dist. Apr. 28, 2005). *See also State v. Rosado,* No. 88504, 2007 WL 1641836, at *3 (Ohio Ct. App. 8 Dist. June 7, 2007); *State v. Bonello,* 445 N.E.2d 667, 670 (Ohio Ct. App. 10 Dist. 1981).

Furthermore, the undersigned finds no merit to petitioner's challenges to Ohio's mandatory sentencing statutes to the extent he claims they constitute valid grounds for federal habeas relief.

First, the state appellate courts' adjudication of the separation-of-powers issue, which is a matter governed by state law, does not give rise to a cognizable ground for relief. *Cf. Butler v. Berghuis,* No. 1:02cv394, 2005 WL 2417655, at *9 (W.D. Mich. July 12, 2005) (Report & Recommendation), *adopted,* 2005 WL 2417667 (W.D. Mich. Sept. 30, 2005). In *Whalen v. United States*, 445 U.S. 684, 689 n.4 (1980), the Supreme Court noted that "the doctrine of separation of powers embodied in the Federal Constitution is not mandatory on the States." The Sixth Circuit has also held that the separation of powers between a state trial judge and other branches of the state government "is a matter of state law," which is not subject to federal habeas review. *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000) (citing *Pulley v. Harris,* 465 U.S. 37, 41 (1984)); *see also* 28 U.S.C. § 2254(a). In any event, on considering the same issue raised in the federal sentencing context, the Supreme Court has held that the legislature "has the power to define criminal punishments *without giving the courts any sentencing discretion*." *Chapman v. United States,* 500 U.S. 453, 467 (1991) (emphasis added). Therefore, as the Sixth Circuit observed in affirming a mandatory sentence for a federal crime, "the separation-of-powers doctrine provides no comfort for those seeking additional judicial discretion in the sentencing context." *United States v. Cecil,* 615 F.3d 678, 695-96 (6th Cir. 2010), *cert. denied,* 131 S.Ct. 1525 (2011).

Second, petitioner has not demonstrated that imposition of a mandatory eight-year sentence for trafficking in marijuana "in an amount that equaled or exceeded 20,000 grams" implicates Eighth Amendment concerns. The Eighth Amendment's Cruel and Unusual

Punishment Clause "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm,* 463 U.S. 277, 284 (1983). Strict proportionality between a crime and its punishment is not required by the Eighth Amendment. *United States v. Marks,* 209 F.3d 577, 583 (6th Cir. 2000) (citing *Harmelin v. Michigan,* 501 U.S. 957, 959-60 (1991)). Rather, "only an extreme disparity between crime and sentence offends the Eighth Amendment." *Id.* (citing *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir. 1991)); *see also United States v. Wiley,* 132 F. App'x. 635, 643 (6th Cir. 2005); *cf. United States v. Raad,* 406 F.3d 1322, 1324 (11th Cir. 2005) (when addressing an Eighth Amendment claim, the reviewing court must "make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed"). A sentence that falls within the maximum penalty set by statute "generally does not constitute 'cruel and unusual punishment'" within the meaning of the Eighth Amendment. *Bryant v. Yukins,* 39 F. App'x. 121, 123 (6th Cir. 2002) (quoting *Austin,* 213 F.3d at 302, in turn quoting *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)). In this case, the mandatory prison sentence of eight years, set by statute, is not grossly disproportional to the trafficking and possession offenses involving a large quantity of marijuana. Therefore, petitioner's claim of an Eighth Amendment violation lacks merit.

Accordingly, in sum, petitioner has not demonstrated that he was denied the effective assistance of counsel when his attorney on direct appeal filed a no-error *Anders* brief. Petitioner has not demonstrated, as required under the second prong of the *Strickland* test, that a reasonable probability exists that "but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on appeal." *See Robbins,* 528 U.S. at 285-86. Therefore, petitioner is not entitled to relief based on the claim alleged in Ground Four of the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claim alleged in Ground Three of the petition, which this Court has concluded is waived and thus procedurally barred from review, because under the two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling or whether petitioner has stated a viable constitutional claim. A certificate of appealability also should not issue with respect to petitioner's remaining grounds for relief, which have been addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented therein are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


Date:  12/12/2011                                 s/Karen L. Litkovitz
          cbc                                     Karen L. Litkovitz
                                                  United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KENNETH SHARP,                                    Case No. 1:10-cv-831
    Petitioner

    vs                                            Spiegel, J.
                                                      Litkovitz, M.J.

WARDEN, PICKAWAY
CORRECTIONAL INSTITUTION,
    Respondent


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).